IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KARSTEN O. ALLEN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:22cv00619 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| DR. MULLINS, *et al.*, | ) | By:    Hon. Thomas T. Cullen |
| | ) |          United States District Judge |
| Defendants. | ) | |

Karsten O. Allen, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against Virginia Department of Correction ("VDOC"), Keen Mountain Correctional Center ("Keen Mountain"), and Wallens Ridge State Prison ("Wallens Ridge") staff, alleging that he was denied adequate medical treatment for his chronic back pain. This matter is before the court on the defendants' motion asking the court to revoke Allen's *in forma pauperis* status[1] because Allen's action is barred under 28 U.S.C. § 1915(g). Having reviewed the record, the court agrees and will grant the defendants' motion.

## I.

Under the "three[-]strikes provision" of the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring an *in forma pauperis* civil action or appeal if, while incarcerated, he has filed three or more actions or appeals that were dismissed as frivolous, malicious, or because they failed to state a claim upon which relief may be granted, unless the prisoner is under

---

[1] By order entered October 28, 2022, the court granted Allen the opportunity to proceed *in forma pauperis*, but warned him that the order "may be rescinded if the court determines that plaintiff has had three prior cases dismissed as frivolous, malicious, or for failure to state a claim, pursuant to 28 U.S.C. § 1915(g)." (ECF No. 4 at 2.)

imminent danger of serious physical injury. 28 U.S.C. § 1915(g). This provision is mandatory. *See Blakely v. Wards*, 738 F.3d 607, 619 (4th Cir. 2013) (describing § 1915(g) as "mandatory"). A dismissal for one of these reasons, regardless of whether it is with or without prejudice, counts toward the three strikes. *See Lomax v. Ortiz-Marquez*, 140 S. Ct. 1721 (2020).

Allen did not prepay the filing fee and seeks to proceed *in forma pauperis* with this action. (*See* ECF No. 3.) As the court reviews Allen's filing history, it is clear that he is a three-striker under § 1915(g). In April 2021, while incarcerated, Allen filed two separate actions under 42 U.S.C. § 1983, seeking damages for the alleged violations of his First and Fourteenth Amendment rights. *See Allen. v. Coleman, et al.*, No. 7:21cv241 (W.D. Va.); *Allen. v. Fields, et al.*, No. 7:21cv244 (W.D. Va.). On March 25, 2022, the court granted the defendants' motions to dismiss in each of the cases, finding that Allen's allegations failed to state a claim. The court's dismissals each counted as a strike under § 1915(g), giving him two strikes as of March 25, 2022.

Also in April 2021, while incarcerated, Allen filed another action under § 1983 seeking damages for the alleged violation of his Eighth and Fourteenth Amendment rights. *See Allen v. Sater, et al.*, No. 7:21cv230 (W.D. Va.). On July 18, 2022, the court granted the defendants' motion to dismiss the case, finding that Allen's allegations failed to state a claim. The court's dismissal counted as a strike under § 1915(g), giving him his third strike as of July 18, 2022. Allen filed his complaint in this case on October 18, 2022, after he had already accrued three strikes. (Compl. at 17 [ECF No. 1].) Accordingly, because Allen has not prepaid the filing fee and he had three strikes at the time he filed his complaint, he may only proceed with this action if he was under imminent danger of serious physical injury when he filed the complaint.

- 2 -

The imminent-danger exception is triggered only if the incarcerated person alleges sufficient and specific facts establishing that he or she is in imminent danger of serious physical injury at the time of filing. *See Johnson v. Warner*, 200 F. App'x 270, 272 (4th Cir. 2006). The imminent danger exception must be construed narrowly and applied only "for genuine emergencies," where "time is pressing" and "a threat . . . is real and proximate" to the alleged official misconduct. *Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002). District courts have broad discretion to consider the totality of the circumstances, both past and present, to determine whether an incarcerated person faces imminent danger of serious injury at the time of filing because of denied or delayed medical care causing worsening conditions. *Hall v. United States*, 44 F.4th 218, 224 (4th Cir. 2022).

## II.

### A.  Allen's complaint

Allen alleges that he has suffered from "chronic and intermittently severe back pain" since 2016. (Compl. at 2.) To treat this pain, he states that between 2016 and 2020, while he was incarcerated, he was prescribed medications in "various doses and combinations," provided with physical therapy, and instructed on stretching exercises he should perform. (*Id.*) In March 2019, a doctor ordered an MRI of Allen's lower back. (*See* ECF No. 1-1 at 1.) In April 2019, Allen was given a steroid epidural injection in his back for pain. Allen states that in the months following, his pain "did not substantially dissipate." (Compl. at 3.) Allen was given a second epidural injection in August 2019. He states that "it wasn't clear how effective the epidurals were" and he "nevertheless still experienced bouts of severe pain." (*Id.*)

In January 2020, Allen met with a neurologist who "recommended against" Allen having surgery for his back pain. (*Id.*) Instead, Allen states that because he was mobile, "still able to exercise," and was "youthful and active," the neurologist suggested that Allen seek other pain relief and "avoid surgery until much later in life." (*Id.* at 4.) The neurologist recommended that Allen maintain "conservative treatments but did not specify what those treatments should be." (*Id.*)

In February 2020, Allen was transferred to Keen Mountain. While at Keen Mountain, Allen repeatedly complained about back pain and requested an epidural injection for the pain, but the doctor repeatedly declined to refer Allen for an epidural and medical staff continued to treat his back pain with various combinations of medications. In April 2021, Allen met with a neurosurgeon concerning his neck pain. In June 2021, Allen had neck surgery.

In April 2022, Allen was transferred to Wallens Ridge. That same month, Allen met with the doctor about his back and neck and he was scheduled for an MRI of his neck as well as a follow-up with the neurosurgeon.

In June 2022, Allen met with another doctor about his chronic back pain and reported "need for epidural injections." (*Id.* at 10.) Allen claims that the doctor noted that Allen had an upcoming appointment with the neurosurgeon and advised Allen that "there were no orthopedists in the area who conducted spinal procedures." (*Id.*)

In July 2022, Allen had a telemedicine ("telemed") appointment with the neurosurgeon. Allen states that the neurosurgeon continued to recommend against surgery for Allen's back and advised Allen that, "as a neurosurgeon he could only make recommendations based on neurosurgical decisions and that he could not give any medical orders outside of that scope."

(*Id.* at 11.) When Allen discussed his prior epidural injections with the neurosurgeon, the doctor stated that although it was a "viable option," he could not order it and advised Allen to speak the institutional doctor to get a referral for "the appropriate physician." (*Id.*)

Later that month, Allen met with the institutional doctor and updated him on his appointment with the neurosurgeon. Allen states that the doctor suggested that they could try to get Allen into physical therapy because "that could be done locally." (*Id.*) He also claims that the doctor told him that "there were no orthopedists in the area that conducted spinal procedures" and VDOC officials wanted "everything" handled "in the region." (*Id.*)

Over the next few months, Allen had several other appointments with the institutional doctor and every time Allen complained about his chronic pain, the doctor changed and/or rearranged his medications. At an appointment on October 11, 2022, the doctor again declined to order an epidural injection, but advised Allen that he had another upcoming appointment with the neurosurgeon. Allen filed this action on October 18, 2022.

### B. Nurse Townsend's affidavit and Allen's medical records

In response to Allen's motion seeking preliminary injunctive relief filed with his complaint, Nurse Townsend filed an affidavit as well as Allen's medical records.[2] (T. Townsend Aff., Jan. 25, 2023 [ECF No. 16-1]; Med. Rec. [ECF Nos. 16-1−16-3].) Nurse Townsend noted that, although Allen arrived at Wallens Ridge in April 2022 complaining

---

[2] Allen challenges parts of Nurse Townsend's affidavit, arguing that they are misleading and/or unsupported by the medical records. (*See* ECF No. 38.) The court has reviewed the affidavit along with the medical records (which he does not challenge the accuracy of) and finds no clear discrepancies between the two that are relevant to the court's analysis here. To be sure though, the court relies on Allen's medical records almost exclusively for purposes of its analysis.

about back pain, his issues with his back began well before his transfer there.[3] Medical records establish that when Allen arrived at Wallens Ridge on April 1, 2022, he saw a nurse at intake and complained about "chronic back pain." (ECF No. 16-2 at 1.) The nurse noted that Allen had a pending telemed appointment with a neurosurgeon. Allen saw a nurse again on April 12, 2022, at which time he complained about chronic arm pain and numbness from a prior surgery, but the nurse noted he had "no other needs." (ECF No. 16-1 at 52.)

Allen saw the doctor on April 18 and May 11, 2022, and Allen was approved for an MRI. An MRI of Allen's neck was performed on June 15, 2022.

Allen had a telemed appointment with the neurosurgeon on July 19, 2022, where his back pain was discussed "at length." (ECF No. 16-3 at 24.) The doctor noted that Allen has "mild scoliosis" and that he did not recommend surgical intervention. (*Id.*) Allen "express[ed] displeasure" with the number of nonsurgical treatment options he had been referred for and the neurosurgeon explained that he would endorse any nonsurgical treatment options that are available to Allen, but noted that he deferred to the doctor at Allen's facility for what options would be available. (*Id.*) Although the neurosurgeon noted that the epidural steroid injections up to four times a year "seem[ed] reasonable," he did not order injections at the July 19, 2022 visit. (*Id.*) Allen did, however, receive neck x-rays on July 21, 2022.

On October 12, 2022, the doctor noted in Allen's medical chart that he was referred to an orthopedist. Allen had a telemed appointment with the neurosurgeon on October 18, 2022, and he informed the neurosurgeon that he had undergone an epidural steroid injection for his low-back pain with a good result in August 2019 and stated he would like to try another

---

[3] Medical records show that Allen self-reported that he has had scoliosis since age 9. (*See* ECF No. 16-3 at 45.)

injection. An epidural injection was ordered after the appointment, and Allen received the injection on November 28, 2022.

Allen had another telemed appointment with the neurosurgeon on December 20, 2022. The doctor noted that Allen was "more concerned" with his low back than his neck or extremity numbness. (ECF No. 16-3 at 2.) He also noted that he had ordered an epidural injection the previous month and that while Allen reported that it did provide him "some relief," Allen felt it "may not have been as effective as the injection in 2019." (*Id.*) The doctor noted that he recommended nonsurgical treatment, but he did not order any more epidural injections. He did, however, refer Allen for an orthopedic evaluation. The Health Services Unit approved the orthopedic consultation on January 6, 2023, and Wallens Ridge sent the request to the VCU Medical Center scheduling department for an appointment date.

According to Nurse Townsend, from Allen's arrival at Wallens Ridge on April 1, 2022, until January 9, 2023, Allen was seen by nurses approximately 46 times and by doctors 14 times to address his medical complaints.

## III.

It is undisputed that, at the time he filed this action, Allen was receiving medical treatment, including for his chronic back pain, at Wallens Ridge. Allen saw medical staff approximately 60 times between April 2022 and the beginning of January 2023. In addition to multiple assessments by the institutional doctor and a neurosurgeon, Allen has been given varying combinations of medications and an epidural injection, none of which have been completely effective at relieving Allen's pain. But the Eighth Amendment does not require "prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment."

*DePriest v. Cane*, No. 3:21cv624 (DJN), 2023 U.S. Dist. LEXIS 99619, *19 (E.D. Va. Jun. 7, 2023) (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)). So long as medical staff respond reasonably to an inmate's complaints of pain, the inmate's Eighth Amendment rights are not violated. *Brown v. Harris*, 240 F.3d at 389−90 (4th Cir. 2001). One week before he filed this action, at an appointment with the institutional doctor, the doctor advised him that he had an upcoming appointment with the neurosurgeon. On the same day he filed this action, October 18, Allen had an appointment with a neurosurgeon and the neurosurgeon ordered an epidural injection for Allen's back pain. After Allen reported that the epidural was not as effective as it had been in 2019, the neurosurgeon referred Allen to an orthopedist.

Where a three-striker inmate's allegations reflect that he has had access to medical care and he simply disagrees with the opinions of the medical personnel who have examined and treated him, he fails to satisfy the imminent danger requirement of § 1915(g). *See Ball v. Famiglio*, 726 F.3d 448, 468 (3rd Cir. 2013) (allegations of disagreements about quality of medical care insufficient to show imminent danger); *Brown v. Beard*, 492 F. Supp. 2d 474, 478 (E.D. Pa. 2007) (rejecting imminent danger claim when prisoner "does not dispute that he is receiving medical attention, but merely disputes the findings and quality of the treatment he is receiving"); *Murrell v. Adams*, No. CV 21-01633-PHX-DWL (DMF), 2021 U.S. Dist LEXIS 219392 (D. Ariz. Oct. 12, 2021) (concluding that a dispute over what kind of medication a prisoner should be provided for pain management is not sufficient to establish imminent danger under § 1915(g)); *Jones v. Drs.*, No. 3:21cv00531-DMS-MSB, 2021 U.S. Dist. LEXIS 181161, at *6 (S.D. Cal. Sept. 22, 2021) (finding prisoner's complaints of chest pain, followed by x-ray and referral for follow up care, insufficient to satisfy section 1915(g)'s imminent

danger exception); *Dustin v. Kern Valley State Prison Personnel*, No. 1:19cv00989-LJO-SAB (PC), 2019 U.S. Dist. LEXIS 207391, at *3 (E.D. Cal. Dec. 2, 2019) (allegations of lingering pain caused by "injur[y] in the past by one or more former cellmates and a porter do not establish that [plaintiff] was in imminent danger of serious physical injury at the time he filed his complaint"); *Fields v. Omosaiye*, No. 18-cv-04469-CRB (PR), 2019 U.S. Dist. LEXIS 67325, at *3 (N.D. Cal. Apr. 19, 2019) (pain and suffering due to denial of referral for neck surgery evaluation insufficient to demonstrate imminent danger); *Stewart v. Lystad*, No. 2:16cv01439-BHS-JRC, 2016 U.S. Dist. LEXIS 159718, at *6 (W.D. Wash. Oct. 14, 2016) (finding prisoner's claims of "intractable" foot pain, and an alleged inability to "work out, fall asleep, work, stand for long periods or walk long distances" insufficient to satisfy § 1915(g)'s imminent danger exception), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS 159720 (W.D. Wash. Nov. 17, 2016); *Balzarini v. Lewis*, No. 1:13cv00820-LJO-BAM (PC), 2015 U.S. Dist. LEXIS 63600, at *21−22 (E.D. Cal. May 14, 2015) (finding plaintiff's disagreement with prison medical personnel about the course or adequacy of treatment he was receiving did not establish imminent danger); *Thomas v. Ellis*, Case No. 12cv05563-CW (PR), 2015 U.S. Dist. LEXIS 24264, at *9 (N.D. Cal. Feb. 26, 2015) (finding imminent danger exception does not apply where the prisoner is receiving medical treatment but disputes the quality of the treatment he is receiving); *Jackson v. Jin*, No. 12cv6445-FPG, 2014 U.S. Dist. LEXIS 44109, at *6−7, (W.D.N.Y. Mar. 31, 2014) (no imminent danger claim where plaintiff alleged he was being treated with unsatisfactory pain medications); *Tripati v. Hale*, No. 2:13cv00830, 2013 U.S. Dist. LEXIS 113101, at *7 (W.D. Pa. Aug. 12, 2013) (no imminent danger where plaintiff had many medical examinations for chronic-pain treatment and disputed the quality of his medical

care); *Stephens v. Castro*, No. 1:04cv06717-AWI-SMS-P, 2006 U.S. Dist. LEXIS 35030, at *3 (E.D. Cal. May 31, 2006) (disagreement with prison personnel about course of treatment does not establish an imminent danger of serious physical injury under § 1915(g).) In sum, Allen received regular and abundant medical treatment for his back pain; he simply disagrees with the types of treatment that he received. Accordingly, the court concludes that Allen has not demonstrated that he was in imminent danger of serious physical injury at the time he filed this action.

## IV.

Because Allen has three strikes, has not prepaid the filing fee, and has not demonstrated that he meets the imminent-danger exception, the court will grant the defendants' motion, revoke Allen's *in forma pauperis status*, and dismiss his complaint without prejudice as barred under § 1915(g). All other pending motions will be denied as moot.

The Clerk is directed to send copies of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 29th day of September, 2023.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE